UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MERT CELEBISOY,

                        Petitioner,

    v.

KAREN BRUNSON,

                        Respondent.

No. C08-5739 FDB/KLS

**REPORT AND RECOMMENDATION**
**Noted for: July 31, 2009**

This case has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4. Petitioner Mert Celebisoy filed a 28 U.S.C. § 2254 habeas corpus petition related to his 2004 conviction for first-degree murder. Dkt. 5. Respondent filed an Answer (Dkt. 12) and submitted relevant portions of the state court record. Dkt. 13.

Having carefully considered the parties' filings and the record relevant to the grounds raised in the petition, it is recommended that Mr. Celebisoy's habeas petition be denied and this action dismissed.

REPORT AND RECOMMENDATION - 1

# I. STATEMENT OF THE CASE

Mr. Celebiosy is in state custody and is incarcerated at the Clallam Bay Corrections Center. A jury convicted him in 2004 of first-degree murder. Dkt. 13, Exh. 1. The court sentenced him to 344 months of incarceration. Id., p. 4.

## A. Factual Background

The Court of Appeals summarized the facts of Mr. Celebisoy's crime and the trial proceedings as follows:

### I. MURDER AND MAYHEM

On July 17, 2003, on his rural Thurston County property, Jay Barrett discovered a human leg lying on a trail and other skeletal remains in two disinterred shallow graves; he called the police. Police found two legs, a left arm, a partial shoulder, and a torso, with five stab wounds to the back, of a dismembered, decomposing body. The arm and partial shoulder were in a garbage bag. The right arm and head were missing.

That same day, while cleaning out his Olympia home's attic, Barrett's friend Charlie Cortelyou discovered a pile of foul-smelling garbage bags. With the assistance of his wife, Jessica Huntting, Cortelyou put the bags into the garbage bin. After Barrett told them about finding human remains on his property, Huntting contacted the police about the garbage bags from their attic. When police inspected the attic debris, they found blood-covered floor mats, a trunk liner, clothing, a spare tire cover, and insurance card for Felix D'Allesandro with a description of a 1994 Toyota, and a notebook containing D'Allesandro's name.

Both Barrett and Cortelyou gave Mert Celebisoy's name to police. Celebisoy had lived for a time at the Cortelyou residence, and Cortelyou had obtained a job for Celebisoy on the Barrett property. Cortelyou had moved away, but when he returned to his vacant home and unexpectedly discovered Celebiosy at the residence, he demanded Celebisoy's key. When Celebisoy did not return the key, Cortelyou changed the locks and subsequently discovered the foul-smelling garbage bags in the attic.

Believing that they had identified D'Allesandro as a possible homicide victim, police went to his address. There, police found the Toyota described on the insurance card in the Cortelyou's attic debris. Speaking with D'Allesandro's father, Detective Haller learned that D'Allesandro was alive and at home.

REPORT AND RECOMMENDATION - 2

D'Allesandro appeared and told police that his father owned the Toyota but that he drove it.

When Detective Haller asked D'Allesandro if he had ever loaned the Toyota to anyone, D'Allesandro replied that he was the only driver and he had not loaned it to anyone. Haller told D'Allesandro that he wanted to look in the car's trunk. D'Allesandro asked, "Why?" and D'Allesandro's father directed D'Allesandro to retrieve the car keys. When D'Allesandro opened the trunk, Haller observed it was clean and empty, with no spare tire cover and an ill-fitting floor covering that appeared to have been freshly cut.

Detective Haller told D'Allesandro and his parents that he was investigating a homicide and that bloodstained items had been found with D'Allesandro's insurance card. When Haller again asked D'Allesandro whether he had loaned his car to anyone, D'Allesandro replied that a month before he had loaned the car to Celebisoy, who had failed to return it when he was supposed to. When Haller reminded D'Allesandro that he was conducting a homicide investigation in which it appeared the Toyota was involved, D'Allesandro replied that "there was more to be told."

D'Allesandro then admitted having driven the Toyota when Celebisoy killed a man named "Dave" during a meeting about drugs; D'Allesandro also gave a tape recorded statement in his parents' presence at their home, during which Detective Haller told D'Allesandro he was not under arrest.

D'Allesandro's parents signed a consent form, authorizing Haller to take the Toyota into evidence. Haller took possession of the Toyota. Detectives then went to arrest Celebisoy, about whom Haller was already aware from information Barrett and Cortelyou had previously provided.

Detective Bergt interviewed Celebisoy in custody. Celebisoy related an account of events similar to D'Allesandro's but claimed D'Allesandro had done the killing and that he had only helped dispose of the body afterwards.

## II. PROCEDURE

The State charged Celebisoy and D'Alessandro, each as a principal or accomplice, with first degree murder of George while armed with a deadly weapon. The State charged them alternatively with premeditated intentional murder or felony murder during the course of a kidnapping or attempted kidnapping.
…

The jury found Celebisoy guilty of felony first degree murder while armed with a deadly weapon.
…

REPORT AND RECOMMENDATION - 3

> The trial court denied the State's request for an exceptional sentence for
> Celebisoy and sentenced him to a standard range sentence of 320 months, with an
> additional 24-month deadly weapon enhancement, for a total of 344 months.

Dkt. 13, Exh. 4, pp. 2-4, 9.

**B.      Procedural History**

On December 10, 2004, Mr. Celebisoy appealed his conviction. Dkt. 13, Exh. 2. The Court of Appeals affirmed his conviction. Id., Exh. 4. Mr. Celebisoy petitioned for review on February 2, 2005. Id., Exh. 5. On October 10, 2006, the Supreme Court denied review. Id., Exh. 6.

On July 23, 2007, Mr. Celebisoy filed a personal restraint petition. Id., Exh. 7. The Court of Appeals dismissed the petition on May 13, 2008. Id., Exh. 9. On June 11, 2008, Mr. Celebisoy petitioned for review. Id., Exh. 10. The Supreme Court denied review on November 3, 2008. Id., Exh. 11.

## II.  ISSUES FOR FEDERAL HABEAS REVIEW

Mr. Celebisoy lists the following issues as grounds for relief in his federal habeas corpus petition:

> 1.      The appellant was denied his right to fair trial where he was not provided
> with a court certified translator.
>
> 2.      The appellant was denied his constitutional right to contact his counsel of
> origin. Violation of Vienna Convention (21 U.S.T. 77, art. 36).

Dkt. 5, pp. 5-6 (CM/ECF page numbering).

## III.  EXHAUSTION OF STATE REMEDIES

Respondent does not dispute that Mr. Celebisoy has properly exhausted his claims. See Dkt. 12, p. 7.

## IV. EVIDENTIARY HEARING

The decision to hold a hearing is committed to the court's discretion. *Williams v. Woodford*, 306 F.3d 665, 688 (9th Cir. 2002). State court findings are presumptively correct in federal habeas corpus proceedings, placing the burden squarely on the petitioner to rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). Because the deferential standards prescribed by § 2254 of the Antiterrorism and Effective Death Penalty Act (AEDPA) control whether to grant habeas relief, a federal court must taken into account those standards in deciding whether an evidentiary hearing is appropriate. *Id*.

An evidentiary hearing is not required where the petition raises solely questions of law or where the issues may be resolved on the basis of the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). The petitioner must demonstrate that an evidentiary hearing would materially advance his claims and explain why the record before the court, or an expanded record, is inadequate for review. *Totten*, 137 F.3d at 1176-77; see also Rule 8 of the Rules Governing 2254 Cases. It is not the duty of the state court to ensure that the petitioner develops the factual record supporting a claim. *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) (citing *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir. 1994)); see also *Baja v. DuCharme*, 187 F.3d 1075, 1079 (9th Cir. 1999); *In re Rice*, 118 Wash.2d 876, 884, 828 P.2d 1086, cert. denied, 506 U.S. 958 (1992).

Mr. Celebisoy's claims that he was denied a fair trial because he was not provided a court-certified translator and that he was denied his constitutional right to contact his counsel of

origin in violation of the Vienna Convention are matters that can be resolved by reference to the state court record. The Court finds that an evidentiary hearing is not required.

## V. STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). Pursuant to the federal habeas statute for state convictions, a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." § 2254(a)(1995). The Supreme Court has repeatedly held that federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In a habeas corpus petition, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes the district court's standard of review of the state court's decision. *Barker v. Fleming*, 423 F.3d 1085, 1091 (ith Cir. 2005). Under AEDPA, a federal court cannot grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA standard of review "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*, 529 U.S. at 405-06). A state court decision also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). As noted above, however, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

REPORT AND RECOMMENDATION - 7

## VI. DISCUSSION

### A. Failure to Provide Court-Certified Interpreter

In his first ground for relief, Mr. Celebisoy states that he was denied his right to a fair trial when he was not provided with a court-certified translator. Dkt. 5, p. 5.[1] Mr. Celebisoy states that he is not an American and does not speak English as his native language. *Id*., p. 6. Mr. Celebisoy states that although he had some grasp of English, he was unable to understand the court proceedings. *Id*. He and his family informed his defense attorney about the language barrier, but Mr. Celebisoy states that the court refused to assign a certified interpreter, "citing the fact that there was no Turkish interpreter in the state and relying on 'judicial economy', the court opted for an uncertified translator." *Id*.

Based on its review of the record, the Washington Court of Appeals held that the trial court did not violate Mr. Celebisoy's rights when it appointed an uncertified interpreter rather than appointing a simultaneous or a sequential interpreter because Mr. Celebisoy did not need an interpreter to understand the proceedings:

> VI. INTERPRETER
>
> Celebisoy contends the trial court denied his right to due process [right to confront witnesses. U.S. CONST. amend. VI] [internal footnote 14] by appointing an uncertified interpreter to aid in the court proceedings rather than to perform as a sequential or simultaneous interpreter. The record does not support this contention.
>
> When a defendant notifies the trial court about a significant language difficulty, the trial court must determine whether an interpreter "is needed." *State v. Woo Won Choi*, 55 Wn. App. 895, 902, 781 P.2d 505 (1989), *review denied*, 114 Wn.2d 1002 (1990). Appointment of an interpreter is a matter of trial court discretion, which we disturb only upon a showing of abuse. *State v. Trevino*, 10 Wn. App. 89, 94-95, 516 P.2d 779 (1973), *review denied*, 83 Wn.2d 1009 (1974). We find no abuse of discretion here.

---

[1] CM/ECF page numbering.

REPORT AND RECOMMENDATION - 8

The State made an offer of proof comprising evidence from witnesses who had contacts with Celebisoy, tape recordings of his extensive conversations with police, and court records of other criminal proceedings in which Celebisoy had not requested or used an interpreter. The trial court ruled:

> But I also after listening to this and keeping it in the context, not just of the two prior District Court cases, but even in this case with months of communication between he and his counsel, this issue has never come up. But even more strongly than that is my own impression after listening to his live discourse or recorded discourse on the tapes that he does readily speak and understand the English language, and I think his language skills are adequate enough to attend trial proceedings, and as a consequence I think if an interpreter were not available that one would not be necessary. He can and does understand what's going on and can communicate.

RP at 178.

Having decided that Celebisoy did not need an interpreter to understand the proceedings, the trial court denied his request for an interpreter "as a simultaneous []or a sequential interpreter." Nonetheless, "in an abundance of caution," the trial court appointed an interpreter "as an aid to the defendant and/or his counsel," in case Celebisoy were to need clarification on "some English presentation." RP at 179-81.

We hold that the court did not abuse its discretion in ruling that Celebisoy did not require a simultaneous interpreter and in appointing instead an interpreter to aid Celebisoy and his counsel to clarify the proceedings when needed.

Dkt. 13, Exh. 4, pp. 21-23.

The trial court reviewed pre-trial hearing transcripts, noting that Mr. Celebisoy did not request or use an interpreter in prior proceedings. Dkt. 13, Exh. 13, p. 178. Based on that evidence and the trial court's own observations of Mr. Celibisoy's language skills, the trial court ruled that Mr. Celebisoy's language skills were adequate for him to attend trial without an interpreter. *Id*. Despite that finding, the trial court retained the interpreter to aid Mr. Celibisoy and his counsel at trial.[2]

---

[2] *See also* Verbatim Report of Proceedings, Dkt. 13, Exh. 13, pp. 115-24 and 175-82.

REPORT AND RECOMMENDATION - 9

As noted above, the Washington Court of Appeals found that the trial court did not abuse its discretion in ruling that Mr. Celebisoy did not require a simultaneous interpreter and in appointing instead an interpreter to aid him and his counsel to clarify the proceedings when needed.

In addition, however, the United States Supreme Court has never explicitly recognized a constitutional right to a court-appointed interpreter. *Calderon v. Scribner*, 2009 WL 1748937, *5 (E.D.Cal. 2009). Thus, to the extent Petitioner simply asserts such a right to have a certified court-appointed interpreter, his claim would not be eligible for habeas relief under 28 U.S.C. § 2254 because he would have not met his burden to state a federal claim or show some clearly established federal law which the trial court violated or unreasonably applied. *See* 28 U.S.C. § 2254(d). *See also Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("In the absence of United States Supreme Court precedent, that adjudication is not contrary to or unreasonable application of clearly established federal law.")

Accordingly, the undersigned recommends that Mr. Celebisoy's first ground for habeas relief be denied and dismissed.

**B.      Violation of Vienna Convention**

In his second ground for habeas relief, Mr. Celebisoy argues that he was denied his constitutional right to contact his consul of origin in violation of the Vienna Convention, 21 U.S.T. 77., art. 36. Dkt. 5, p. 6. He argues that upon his arrest, none of the arresting officers, jail staff or interrogating detectives informed him of his right to contact his consul of origin, contrary to the agreement between the United States of America and the Republic of Turkey. *Id*.

The Vienna Convention is a multilateral international agreement that governs relations between individual nationals and foreign consular officials. *Sanchez-Llamas v.* Oregon, 548

REPORT AND RECOMMENDATION - 10

U.S. 331 (2006). Adopted in 1963, 170 states are parties. *Cornejo v. County of San Diego*, 504 F.3d 856 (9th Cir. 2007). The United States ratified the Convention in 1969. *Id*.

Article 36 of the Convention concerns consular officers' access to their nationals detained by authorities in a foreign country. The article provides that "if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner." Art. 36(1)(b), id., at 101.[3] In other words, when a national of one country is detained by authorities in another, the authorities must notify the consular officers of the detainee's home country if the detainee so requests. *Sanchez-Llamas*, 548 U.S. at 338-339. Article 36(1)(b) further states that "[t]he said authorities shall inform the person concerned [ i.e., the detainee] without delay of his rights under this sub-

---

[3] In its entirety, Article 36 of the Vienna Convention states:

"1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

"(a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;

"(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;

"(c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

"2. The rights referred to in paragraph 1 of this article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this article are intended." 21 U.S.T., at 100-101.

REPORT AND RECOMMENDATION - 11

paragraph." *Ibid*. The Convention also provides guidance regarding how these requirements, and the other requirements of Article 36, are to be implemented:

> "The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended." Art. 36(2), ibid.

Along with the Vienna Convention, the United States ratified the Optional Protocol Concerning the Compulsory Settlement of Disputes (Optional Protocol or Protocol), Apr. 24, 1963, [1970] 21 U.S.T. 325, T.I.A.S. No. 6820. The Optional Protocol provides that "[d]isputes arising out of the interpretation or application of the Convention shall lie within the compulsory jurisdiction of the International Court of Justice [(ICJ)]," and allows parties to the Protocol to bring such disputes before the ICJ. Id., at 326.[4]

The Washington Court of Appeals concluded that state courts are not the appropriate forum for addressing Mr. Celebisoy's claim that because he is a Turkish national, the State violated Article 36 of the Vienna Convention when it did not inform him of his right to contact the Turkish Consulate after it arrested him:

> Mert Celebisoy seeks relief from personal restraint imposed following his 2004 conviction of murder in the first degree. In a timely petition, he contends that because he is a Turkish national, the State violated Article 36 of the Vienna Convention when it did not inform him of his right to contact the Turkish Consulate after it arrested him.
>
> However, while it appears that Article 36 of the Vienna Convention applies to Celebisoy and that no one informed him of his rights under that article, those facts do not give Celebisoy relief from personal restraint. The appropriate forums for addressing alleged violations of Article 36 of the Vienna Convention are diplomatic or political arenas.[1] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 126 S.Ct. 2669, 2679-82 (2006); *State v. Jamison*, 105 Wn.App. 572, 583, 20 P.3d

---

[4]The United States gave notice of its withdrawal from the Optional Protocol on March 7, 2005. Letter from Condoleezza Rice, Secretary of State, to Kofi A. Annan, Secretary-General of the United Nations. *Sanchez-Llamas*, 548 U.S. at 339.

REPORT AND RECOMMENDATION - 12

1010, *review denied*, 144 Wn.2d 1018 (2001). State courts are not the appropriate forum for addressing alleged violations of that article. *Jamison*, 105 Wn.App. at 583. Therefore, even assuming that the State violated Article 36 of the Vienna Convention, that violation is not a ground for relief from personal restraint.

[[1]Had the United States not withdrawn from the Optional Protocol of the Vienna Convention, the International Court of Justice could have been a forum for addressing Celebisoy's claim. But this state's courts would still not have been an appropriate forum for addressing Celebisoy's claim.][internal footnote]

Dkt. 13, Exh. 9, pp. 1-2.

The Washington Supreme Court also concluded that Mr. Celebisoy's claim that the State violated his rights under Article 36 of the Vienna Convention could not be resolved in Washington state courts:

> Mert Celebisoy seeks discretionary review of an order of the acting chief judge of Division Two of the Court of Appeals dismissing his personal restraint petition. RAP 16.14(c); RAP 13.5A(a)(1). Mr. Celebisoy was convicted of first degree murder in 2004. He claims that because he is a Turkish national, the State violated article 36 of the Vienna Convention when it failed to inform him of his right to contact a Turkish consular official after his arrest.
>
> The acting chief judge properly concluded Mr. Celebisoy's claim cannot be resolved in a Washington State court. *See State v. Jamison*, 105 Wn.App. 572, 582-83, 20 P.3d 1010 (2001). Whether Mr. Celebisoy's prosecution violated international treaty rights is a matter for diplomatic or political resolution. *Id*. at 583. Mr. Celebisoy thus fails to show this court's review is warranted under RAP 13.4(b).
>
> The motion for discretionary review is denied.

Dkt. 13, Exh. 11.

The United States Supreme Court has not directly addressed the issue of whether Article 36 gives individuals enforceable rights. *See Sanchez-Llamas*, 548 U.S. at 343 ("Because we conclude that Sanchez-Llamas and Bustillo are not in any event entitled to relief on their claims, we find it unnecessary to resolve the question whether the Vienna Convention grants individuals enforceable rights."); *See also, Medellin v. Dretke*, 544 U.S. 660 (2005)(Certiorari granted to

REPORT AND RECOMMENDATION - 13

consider whether a federal court is bound by a ruling of the International Court of Justice, but dismissed as improvidently granted in light of an intervening memorandum from the President that the United States would discharge its international obligations); *Breard v. Greene*, 523 U.S. 371 (1998)(Applying Virginia's procedural default doctrine to a Vienna Convention claim on habeas review; remarking that "[a]ny rights that the Consul General might have by virtue of the Vienna Convention exist for the benefit of [the sending State], not for him as an individual.").

After looking to decisions in other circuits, Congressional intent, and analyzing the terms of the treaty, the Ninth Circuit expressly held that Article 36 does not create individually enforceable rights:

> We agree with the district court that Article 36 does not create judicially enforceable rights. Article 36 confers legal rights and obligations on States in order to facilitate and promote consular functions. Consular functions include protecting the interests of detained nationals, and for that purpose detainees have the right (if they want) for the consular post to be notified of their situation. In this sense, detained foreign nationals benefit from Article 36's provisions. But the right to protect nationals belongs to States party to the Convention; no private right is unambiguously conferred on individual detainees such that they may pursue it through § 1983.

In *Cornejo v. County of San Diego*, 504 F.3d 853, 855 (9th Cir. 2007).

The Washington Supreme Court held that the acting chief judge properly concluded that Mr. Celebisoy's claim could not be resolved in a Washington State court and that whether Mr. Celebisoy's prosecution violated international treaty rights is a matter for diplomatic or political resolution. Dkt. 13, Exh. 11 (citing *State v. Jamison*, 105 Wn. App. 575, 582-83, 20 P.3d 1010 (2001)). In the absence of United States Supreme Court holdings to the contrary, the state court's adjudication of Mr. Celebisoy's claim on the merits cannot be said to be contrary to or an unreasonable claim on the merits. *See Carey v. Musladin*, 549 U.S. 70, 76 (2006) ("Given the lack of holdings from this Court, it cannot be said that the state court 'unreasonabl[y] appli[ed[

REPORT AND RECOMMENDATION - 14

clearly established Federal law.'"). If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law. *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000).

The Washington courts' decision that Mr. Celebisoy's claim could not be resolved in the state courts was not contrary to clearly established Federal law. The United States Supreme Court has not ruled to the contrary and the Ninth Circuit has expressly held that Article 36 does not create individually enforceable rights. Accordingly, the undersigned recommends that Mr. Celebisoy's second ground for habeas relief be denied.

## VII. CONCLUSION

Based on the foregoing discussion, Mr. Celebisoy's habeas petition should be denied, and this action dismissed. No evidentiary hearing is required as the record conclusively shows that Petitioner is not entitled to relief.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 31, 2009**, as noted in the caption.

DATED at Tacoma, Washington this  6th  day of July, 2009.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15